**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-20901-BLOOM/Elfenbein**

JOHN OLENIK, *as next friend of*
HELEN OLENIK, *an incapacitated person*,

      Plaintiffs,

v.

CARNIVAL CORPORATION, *d/b/a*
Carnival Cruise Line,

      Defendant.

_____/

## <u>OMNIBUS ORDER</u>

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Carnival")

Motion for Summary Judgment, ECF No. [47], Defendant's Motion to Strike and Exclude the

Opinions from Plaintiff's Experts Francisco De Caso Basalo and Nicholas D. A. Suite, M.D., ECF

No. [48], and Defendant's Motion to Strike Plaintiff's Supplemental Rule 26 Expert Witness

Disclosure for Nicholas Suite and Untimely Supplemental Disclosure of Victoria Maria-Sekunda,

ECF No. [52]. The Plaintiff John Olenik, as next friend of Helen Olenik filed Responses in

Opposition, ECF Nos. [66]; [68]; [74]. Carnival filed Replies in Support, ECF Nos. [70]; [71];

[72]. The Court has reviewed the Motions, the supporting and opposing submissions, the record,

and is otherwise fully advised. For the reasons that follow, the Motions are granted.

### I.   BACKGROUND

Plaintiff John Olenik is the husband and Next Friend of Real Party in interest, Helen Olenik,

an incapacitated adult. In the Complaint, Plaintiff asserts three counts of negligence against

Carnival: Negligent Failure to Maintain (Count I), General Negligence (Count II), and Negligent

Failure to Warn (Count III). ECF No. [15].

### A.  Material Facts

The following facts are not genuinely in dispute unless otherwise noted: On April 29, 2024, Helen Olenik and John Olenik were passengers aboard Carnival Corporation's ship, *M/V Carnival Pride*. ECF Nos. [46] ¶ 1; [67] ¶ 1. Helen Olenik fell on an exterior tile floor after walking through sliding glass doors leading from the interior of the ship to the Serenity pool deck. ECF Nos. [46] ¶ 4; [67] ¶ 4. The area where Helen Olenik fell was adjacent to the Serenity pool deck with a jacuzzi and pool nearby. ECF Nos. [67] ¶ 25; [70] ¶ 25. At the time of the incident, Helen Olenik wore contacts occasionally for reading but did not otherwise have any vision problems. ECF Nos. [46] ¶ 3; [67] ¶ 3. John Olenik was in front of Helen Olenik when she fell and did not see the incident. ECF Nos. [46] ¶ 5; [67] ¶ 5. A caution sign was present on the floor just a couple of feet in front of where Helen Olenik fell. ECF Nos. [46] ¶ 6; [67] ¶ 6. Neither John Olenik nor Helen Olenik recall noticing a liquid or substance on the floor where Helen Olenik fell either before or after the incident or any substance on Helen Olenik's clothing after she fell. ECF Nos. [46] ¶¶ 10-11; [67] ¶¶ 10-11.

On September 28, 2025, Plaintiff's expert, Dr. Francisco De Caso, performed an inspection of the floor where the incident took place. ECF Nos. [46] ¶ 13; [67] ¶ 13. Dr. De Caso tested the slip index of the floor under both dry and wet conditions. His dry measurements averaged 0.58 and his wet measurements averaged 0.23. ECF Nos. [46] ¶ 15; [67] ¶ 15. Dr. De Caso's Report discusses a "grease film problem" and "mineral deposition" he observed on the tiles, but his report does not identify any evidence that these conditions were present in the location and at the time of the incident. ECF Nos. [46] ¶ 16; [67] ¶ 16.

After the incident, Helen Olenik took a medvac flight from Grand Turk to a hospital in Fort Lauderdale where she was admitted and stayed for 10 days recovering from pelvic fractures. ECF

Nos. [46] ¶¶ 17- 18; [67] ¶¶ 17-18. After returning home, Helen Olenik was able to walk independently after completing physical therapy. ECF Nos. [46] ¶ 20; [67] ¶ 20.

In its Motion for Summary Judgment, Carnival seeks summary judgment on all counts because there is no evidence that the floor was contaminated or otherwise in a dangerous condition at the time of the alleged incident. In its Motion to Strike and Exclude the Opinions from Plaintiff's Expert, Carnival seeks to exclude or limit the testimony of Plaintiff's expert, Dr. Francisco De Caso, as his opinions fail to satisfy the qualification, reliability, and/or helpfulness prongs of *Daubert v. Merrell Dow* Pharms*., Inc.*, 509 U.S. 579 (1993). Finally, in its Motion to Strike Plaintiff's Supplemental Rule 26 Expert Witness Disclosure for Nicholas Suite and Untimely Supplemental Disclosure of Victoria Maria-Sekunda, Carnival seeks to exclude the testimony and reports of both Dr. Nicholas Suite and Dr. Victoria Maria-Sekunda as Plaintiff failed to timely provide reports and disclosures as required, and the delay was neither substantially justified nor harmless, warranting exclusion under Federal Rule of Civil Procedure 37(e).

In response to Carnival's Motion for Summary Judgment, Plaintiff argues Dr. De Caso's testing of the subject floor reveals that a grease-contaminated wet tile floor is unreasonably dangerous. ECF No. [66] at 7. In response to Carnival's Motion to Strike and Exclude the Opinions of Plaintiff's Expert, Plaintiff agrees to limit the scope of Dr. De Caso's testimony to his core slip resistance engineering testimony. ECF No. [68]. Finally, in response to Carnival's Motion to Motion to Strike Plaintiff's Supplemental Rule 26 Expert Witness Disclosure for Nicholas Suite and Untimely Supplemental Disclosure of Victoria Maria-Sekunda, Plaintiff argues the untimely disclosures were substantially justified and harmless, ECF No. [74] at 8.

## II.     LEGAL STANDARD

### A.  *Daubert* Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id*.

Under Daubert, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (citations and quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations and quotation marks omitted).

4

Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. On the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005) (quoting *Frazier*, 387 F.3d at 1258).

## B. Late Disclosure of Experts and Expert Reports

### i. Rule 26

Federal Rule of Civil Procedure 26 requires a party to disclose to the other parties the identity of any witness it may use at trial to present expert testimony. *See* Fed. R. Civ. P. 26(a)(2). To make a proper disclosure, parties must disclose the expert's identity "accompanied by a written report." Fed. R. Civ. P. 26(a)(2)(B). The written report must contain an array of information, including a "complete statement of all opinions the witness will express and the basis and reasons for them," "the facts or data considered by the witness in forming them," and the witness' qualifications, lists of cases where the witness testified as an expert, the expert's fee arrangement, and exhibits used to summarize or support the expert's opinions. *See* Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi). Expert disclosures must be made at the times and in the sequence that the court orders. *See* Fed. R. Civ. P. 26(a)(2)(D).

Parties must supplement their expert disclosures when required under Rule 26(e). *See* Fed. R. Civ. P. 26(a)(2)(E). Rule 26(e) imposes a duty on a party to supplement or correct its expert disclosure or response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court." Fed. R. Civ. P. 26(e)(1). Further, for an expert whose report must be disclosed under Rule 26(a)(2)(B), "the party's duty to supplement extends both to information included in the report and to information given during the expert's depositions," and any "additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2).

However, the Eleventh Circuit has affirmed that the supplementation of an expert report "is not a device to allow a party's expert to engage in additional work, or to annul opinions or offer new ones to perfect a litigating strategy." *Cochran v. Brinkmann Corp.,* No. 1:08-cv-1790-WSD, 2009 WL 4823858 at * 5 (N.D. Ga. Dec. 9, 2009), *aff'd*, 381 F. App'x. 968 (11th Cir. 2010). "[T]he expert disclosure rule is intended to provide opposing parties 'reasonable opportunity to prepare for effective cross examination and perhaps arrange for [rebuttal] expert testimony from other witnesses.' " *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000)).

### ii.  Rule 37

If a party violates Rules 26(a) or (e), Rule 37(c) provides for the exclusion of the expert evidence "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The non-disclosing party bears the burden of showing that the failure to comply with Rule 26 was substantially justified or harmless. *Mitchell v. Ford Motor Co.*, 318 F. App'x 821, 824 (11th Cir. 824). In making this determination, the Court considers four factors: "(1) the importance of the

excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Torres v. First Transit, Inc.*, No. 17-CV-81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018) (citations omitted). "Prejudice generally occurs when late disclosure deprives the opposing party of a meaningful opportunity to perform discovery and depositions related to the documents or witnesses in question." *Bowe v. Pub. Storage*, 106 F. Supp. 3d 1252, 1260 (S.D. Fla. 2015) (citation omitted).

Ultimately, the "determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Smith v. Jacobs Eng'g Grp., Inc.*, No. 4:06CV496-WS/WCS, 2008 WL 4264718, at *6 (N.D. Fla. Mar. 20, 2008), *report and recommendation adopted*, No. 4:06 CV 496 WS, 2008 WL 4280167 (N.D. Fla. Sept. 12, 2008) (citation omitted); *Warren v. Delvista Towers Condo. Ass'n, Inc.*, No. 13-23074-CIV, 2014 WL 3764126, at *2 (S.D. Fla. July 30, 2014) (noting that a court has "great discretion in deciding whether to impose such a sanction" for failure to comply with expert witness disclosure requirements). Indeed, "[c]ourts have broad discretion to exclude untimely expert testimony— even when they are designated as 'supplemental' reports." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 718 (11th Cir. 2019).

### C. Summary Judgment

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. See Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." Id. (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); see also *Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

Initially, the moving party bears the "responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); see also *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden,

"the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, LLC, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp.*, 477 U.S. at 322). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave.*, Mia., Fla., 363 F.3d 1099, 1103 n.6 (11th Cir. 2004) *1319 ("One Piece of Real Prop."). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

In resolving the issues presented under Rule 56, "the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Carlin Commc'n, Inc.*, 802 F.2d at 1356. Moreover, summary judgment is inappropriate where the Court would be required to weigh conflicting renditions of material fact or determine witness credibility. See *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) ("It is not the court's role to weigh conflicting evidence or to make credibility determinations; the non-movant's

9

evidence is to be accepted for purposes of summary judgment."); *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he [or she] is ruling on a motion for summary judgment or for a directed verdict." (quoting *Anderson*, 477 U.S. at 255)); see also *Ramirez v. Nicholas*, No. 13-60820-CIV, 2013 WL 5596114, at *4 (S.D. Fla. Oct. 11, 2013) ("The Court may not make the credibility determinations needed to resolve this conflict; only the jury may do so.").

### D.  Maritime Law

The parties agree that this case is governed by maritime law. ECF No. [47] at 2; [66] at 4. In analyzing a maritime tort case, courts rely on general principles of negligence law. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). The elements of a negligence claim based on a shipowner's direct liability for its own negligence are well settled: "a plaintiff must allege that (1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014) (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to [a p]laintiff's negligence claim and [a p]laintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

Moreover, a "cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident-causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th

Cir. 1989)); *see also Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016)

("Generally, ship owners and operators do not owe a heightened or special duty of care to their

passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630

(1959)), aff'd, 679 F. App'x 981 (11th Cir. 2017). Rather, "under maritime law, the owner of a ship

in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels

v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

To establish the owner of a ship in navigable waters breached its duty of care under a theory

of direct liability, a plaintiff must show: "(1) a dangerous condition existed; (2) the vessel's

operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that

defendant had constructive notice of the dangerous condition for an interval of time sufficient to

allow the vessel's operator to implement corrective measures." *Stewart v. Carnival Corp.*, 365 F.

Supp. 3d 1272, 1275 (S.D. Fla. 2019) (quoting *Reinhardt v. Royal Caribbean Cruises, Ltd., No.*

1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013)).

## III.   DISCUSSION

Since the determination of the Defendant's Motion for Summary Judgment requires an analysis

of the expert's opinions, the Court proceeds to the *Daubert* Motion and Motion to Strike first.

### A. *Daubert* Motion and Motion to Strike

#### i.   Dr. Francisco De Caso

Carnival argues Dr. De Caso's opinions fail to satisfy Federal Rule of Evidence 702 and

*Daubert* standards. ECF No. [48] at 2. Specifically, Carnival contends Dr. De Caso is not qualified

to opine on human factors or housekeeping standards. *Id*. at 4. Carnival points out that Dr. De

Caso's *curriculum vitae* does not identify any education, training, or experience in human factors

and his list of publications, professional experience, and teaching experience similarly lack any

mention of human factors. *Id*. at 5. Carnival further argues that Dr. De Caso has been repeatedly

precluded from testifying about human factors by courts in this district. *Id*. at 6. Carnival offers

the following citations in support:

> *See Padula* at \*14 (finding De Caso was "not qualified to offer expert opinions regarding what Plaintiff, or some other reasonable person, would have seen and how they would have reacted to it."); *Kessler v. NCL (Bahamas) Ltd.*, No. 19-cv-20583, 2019 WL 8128483, 2019 U.S. Dist. LEXIS 228545, at \*12 (S.D. Fla. Dec. 20, 2019) (finding Dr. De Caso "not qualified to render an expert opinion as to human factors, including as to gait, signage and visibility, based on his admission that he is not a human factors expert"); *Darby v. Carnival Corp.*, No. 19-cv-21219, 2021 WL 6428039, 2021 U.S. Dist. LEXIS 227077, at \*20 (S.D. Fla. Nov. 23, 2021), report and recommendation adopted by *Darby v. Carnival Corp.*, 2022 WL 112193, 2022 U.S. Dist. LEXIS 6487 (S.D. Fla. Jan. 12, 2022)

*Id*. Moreover, Carnival points out that Dr. De Caso has also been precluded from testifying about

cleaning and maintenance. *Id*. at 7 (citing *Kessler v. NCL (Bahamas) Ltd.*, No. 1:19-CV-20583,

2019 WL 8128483, at \*4) ("Dr. De Caso is not qualified to render an expert opinion as to Spa

cleaning and maintenance, based on his admission that he has never been employed in a position

related to cleaning or janitorial maintenance.").

Second, Carnival avers that the majority of Dr. De Caso's opinions are speculative and

unsupported by a reliable methodology. *Id*. at 7. Carnival describes Dr. De Caso's opinions as a

"scattershot attempt to testify to a jury that many potential hazards could have caused [Helen]

Olenik's fall without any scientific method applied to explain whether these hazards existed as the

time of the incident or how they contributed to the fall." *Id*. at 12. Nonetheless, Carnival concedes

that Dr. De Caso's measurements of the slip index are grounded in a reliable methodology. *Id*.

Moreover, Carnival argues Dr. De Caso should not be permitted to offer unhelpful legal

conclusions. *Id*. at 13.

Plaintiff responds that Dr. De Caso's slip engineering opinions are admissible as Dr. De Caso

has over fifteen years of experience conducting slip resistance evaluations in maritime and other

environments, has testified as an expert in numerous slip-and-fall cases, and participates in the

12

Advancing Standards Transforming Markets ("ASTM") F13 Committee on Pedestrian/Walkway Safety and Footwear Standards Development. ECF No. [68] at 4. Moreover, Plaintiff argues that Dr. De Caso's methodology is reliable and accepted in the scientific community. *Id*. Specifically, Plaintiff points out that Dr. De Caso used industry-standard equipment and methodologies to test the actual floor where Helen Olenik fell aboard the *Carnival Pride* and appropriately utilized water as the contaminant. *Id*. at 5. Olenik argues water is the actual foreseeable contaminant on a pool deck and "[t]esting slip resistance with the actual expected contaminant is a fundamental principle of tribology." *Id*.

However, Plaintiff agrees to limit the scope of Dr. De Caso's testimony and concedes that he will not offer opinions at trial regarding:

- Human factors, including passenger perception, visibility of contaminants, gait analysis, or pedestrian behavior
- Signage effectiveness, warning adequacy, or visual conspicuity from a human factors perspective
- Housekeeping or janitorial maintenance standards or practices

*Id*. at 6-7. Plaintiff further agrees to redact legal conclusions from the expert report. *Id*. at 7. As such, Plaintiff identifies the following as what remains after the concessions:

- The methodology used to conduct slip resistance testing
- The industry-standard testing equipment employed
- The slip resistance measurements obtained under wet and dry conditions
- The recognized minimum safety thresholds for pedestrian walking surfaces
- The engineering opinion that wet slip resistance fell below industry-recognized minimum safety standards
- The applicable codes, standards, and industry guidance

*Id*.

Carnival replies that "Olenik concedes most of the arguments raised in Carnival's [M]otion." ECF No. [71] at 1. Moreover, Carnival points out to the extent Olenik does not concede Carnival's

arguments, he either does not address them, or the now limited testimony makes the arguments irrelevant. *Id*. at 2.

Thus, the Court turns to address whether the testimony of Dr. De Caso, after Plaintiff's concessions, satisfies the "qualifications," "reliability," and "helpfulness" prongs of the *Daubert* standard. *Frazier*, 387 F.3d at 1260.

First, as to qualifications, "[t]he qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is *minimally* qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Banuchi v. City of Homestead*, 606 F. Supp. 3d 1262, 1272 (S.D. Fla. 2022) (citing *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009)) (quoting *Kilpatrick v. Breg, Inc.*, Case No. 08-10052-CIV, 2009 WL 2058384 (S.D. Fla. June 25, 2009)). Nonetheless, the party proffering the expert must still "show that his expert is qualified to testify competently regarding the matters he intend[s] to address[.]" *Frazier*, 387 F.3d at 1260.

Here, Plaintiff has established that Dr. De Caso is qualified as a slip resistance expert. Dr. De Caso's *curriculum vitae* established that Dr. De Caso is a licensed professional engineer in Florida, with a Ph.D. in civil engineering. ECF No. [48-2]. Dr. De Caso is also the founder and principal of The Integrated Built Infrastructure Group LLC. that specializes in pedestrian walkway safety and slip resistance evaluation. *Id*. Moreover, Dr. De Castro reports that he is Certified XL Tribometrist, completed the Walkway Safety Certification program at the University of North Texas College of Engineering, and earned the Walkway Auditor Certificate from the National Floor Safety Institute. ECF No. [64-2] ¶ 29. The Court notes that Carnival does not contest those qualifications as it relates to Dr. De Caso as a slip resistance expert but challenges the qualifications to opine about human factors and housekeeping standards. ECF No. [48] at 4.

Second, an expert satisfies the reliability prong of the *Daubert* standard when the methodology by which the expert reaches conclusions is sufficiently reliable as determined through consideration of several non-exclusive factors, primarily:

> (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community.

*Chapman v. Procter & Gamble Distrib.*, LLC, 766 F.3d 1296, 1305 (11th Cir. 2014) (quoting United Fire & Cas. Co. v. Whirlpool Corp., 704 F.3d 1338, 1341 (11th Cir. 2013).

Here, Plaintiff has established that Dr. De Caso's slip resistance testing is reliable. Plaintiff points out that Dr. De Caso employed industry-standard equipment and methodologies following recognized ASTM standards. Moreover, he used an English XL tribometer for slip index measurements, a BOT-3000E tribometer for dynamic coefficient of friction measurements, and an SJ-210 surface roughness meter. ECF No. [48-1] at 15. Dr. De Caso notes that these devices are used and consistent with the ASTM F1694 (Standard Guide for Composing Walkway Surface Investigation), and the ASTM F2508 (Standard Practice for Validation of Walkway Tribometers. ECF No. [64] ¶¶ 5, 31. Carnival does not contest the reliability of the measurements of the slip index of the subject floor, but challenges Dr. De Caso's opinions which are not based on identifiable methodology. This includes his opinions that the floor at the time of the incident was more likely than not to become wet, or his observations, some one and a half years later, of grease film on the floor suggesting a grease film incident on the day in question. ECF No. [48] at 7-11. As to Dr. De Caso's opinions beyond his slip index testing, Plaintiff has failed to establish or point to any reliable methodology.

Finally, helpfulness, turns on whether the proffered testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F. App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). Here, Plaintiff has agreed to redact all legal conclusions from the expert report and limit the testimony of Dr. De Caso to opinions related to his slip index testing. As such, Carnival's Motion, ECF No. [48], is granted.

### ii. Dr. Nicholas Suite and Dr. Victoria-Maria Sekunda

In its Motion to Strike, ECF No. [48], Carnival argues Dr. Nicholas Suite should be precluded from testifying because Olenik never produced a report prepared and signed by Dr. Suite as required by Federal Rule of Civil Procedure 26(a)(2)(B). ECF No. [48] at 14. After the filing of the Motion, on February 4, 2026, Plaintiff served Carnival a Supplemental Rule 26 Expert Witness Disclosure which included a report from Dr. Suite. ECF Nos. [52] at 2; [52-3] at 7. Thereafter, on February 6, 2026, Plaintiff served Carnival a Second Supplemental Disclosure which disclosed a new witness, Dr. Victoria-Maria Sekunda, and a copy of her report concerning neuropsychological evaluations conducted of Helen Olenik. ECF Nos. [52] at 2; [52-6]. Carnival argues that discovery closed on January 6, 2026, and the deadline for the Parties to file dispositive pre-trial motions was January 28, 2026. As such, Carnival contends that the late disclosure of those reports is neither substantially justified nor harmless, and the reports should be excluded. ECF No. [52] at 3. Carnival also seeks to exclude the testimony of Dr. Suite and Dr. Sekunda. *Id*.

Carnival points out that even though Dr. Suite evaluated Helen Olenik and prepared a report dated September 22, 2025, the report was not served until four months later, after discovery closed and the deadline for filing dispositive motions passed. *Id*. at 4. Carnival contends this report is the first time it has been asserted that Helen Olenik's post-incident mental decline was caused by a head injury. Likewise, Carnival points out Dr. Sekunda first evaluated Helen Olenik on November 25, 2025, yet the February 6, 2026, Supplemental Notice was the first time Dr. Sekunda's role as

16

a treating doctor was disclosed. *Id*. Carnival argues it has suffered harm because it is now too late to obtain a rebuttal report from Carnival's expert neurologist, to depose Dr. Suite and Dr. Sekunda, or to raise *Daubert* challenges. *Id*. at 5. Carnival further argues it is prejudiced because the claim that advanced through discovery was that Helen Olenik's cognitive decline was due to immobility while she recovered from pelvic fractures. Had it known Helen Olenik suffered a head injury in her fall, it would have provided such information to its experts, and it would have arranged for a neuropsychology expert to perform testing and address Dr. Sekunda's report. *Id*. at 5-6. Finally, Carnival argues that the prejudice from late disclosure cannot be cured through depositions outside of the discovery period, as Carnival is unable to challenge the reliability of the experts in a timely *Daubert* motion, and Carnival's Motion for Summary Judgment seeks dismissal of Helen Olenik's claim for damages for neurocognitive decline because there is no medical expert opinion to support causation. *Id*. at 6.

Plaintiff responds that on December 16, 2025, Dr. Suite was disclosed with a detailed summary of his anticipated opinions. ECF No. [74] at 4. Plaintiff reveals that Dr. Suite examined Helen Olenik on September 22, 2025, but Dr. Suite did not provide a report until January 30, 2026, which Plaintiff served upon Carnival on February 4, 2026. *Id*. at 5. Plaintiff also contends that Carnival's claim that Dr Suite's report is the first time it was asserted Helen Olenik's mental decline was caused by a concussion and head injury is belied by the pleadings and Dr. Sekunda was not retained for litigation purposes but evaluated Helen Olenik as part of her ongoing medical care and treatment for the injuries she sustained in the fall. *Id*. at 6. As a result, Plaintiff's counsel claims they did not learn of Dr. Sekunda's identity until early February 2026, when members of the Olenik family provided documentation and information to counsel. *Id*. at 7. As such, Plaintiff points out he disclosed Dr. Sekunda and produced her report within hours of receiving the information. *Id*.

17

Plaintiff argues these late disclosures were substantially justified and harmless, and the factors set forth in *Lips v. City of Hollywood,* 350 F. App'x 328, 340–41 (11th Cir. 2009), to determine whether exclusion is appropriate, weigh against exclusion. *Id*. In *Lips*, the Eleventh Circuit held that in determining whether a failure to disclose was substantially justified or harmless "we consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009) (citing *Romero v. Drummond Co.,* 552 F.3d 1303, 1321 (11th Cir. 2008)). Plaintiff contends that Dr. Suite's testimony is "critically important" and exclusion of his testimony "would effectively end this claim." *Id*. at 9. Plaintiff also contends that there is a reasonable explanation for the late disclosures. Dr. Suite did not finish his report until January 28, 2026, and counsel was not aware of Dr. Sekunda until early February. *Id*. at 9-10. Finally, Plaintiff argues this Court should impose curative measures rather than exclusion and proposes:

> (a) Permitting Carnival to depose Dr. Suite and Dr. Sekunda at mutually agreeable dates before trial;
> (b) Permitting Carnival's expert Dr. Herskowitz to review and supplement his opinions in light of Dr. Suite's report;
> (c) Permitting Carnival to file a supplemental *Daubert* motion directed at Dr. Suite and/or Dr. Sekunda within 21 days of the completion of those depositions;
> (d) Adjusting any pretrial deadlines as necessary to accommodate the foregoing.

*Id*. at 11.

The Court finds that Plaintiff has not satisfied his burden of showing that the failure to comply with Rule 26 was substantially justified or harmless. On April 16, 2025, this Court issued a Scheduling Order requiring that, by December 9, 2025, the Parties were to disclose experts and exchange expert witness summaries or reports, and by December 23, 2026, the Parties were to exchange rebuttal expert witness summaries or reports. All discovery, including expert discovery

was to be completed by January 6, 2026. *See* ECF No. [16]. Neither party requested an extension of those deadlines. As Plaintiff acknowledges, Dr. Suite's report was not provided until February 4, 2026, well after the close of discovery and after the deadline to exchange expert witness reports. Similarly, Dr. Sekunda was not disclosed as an expert until February 6, 2026.

As for Dr. Suite, Plaintiff has offered no explanation for why he did not seek an extension of the Court's deadlines. As Carnival points out and Plaintiff concedes, Dr. Suite examined Helen Olenik on September 22, 2025, months before expert disclosures were due. Dr. Suite had sufficient time to prepare his report, and Plaintiff should have sought an extension if there was a reason for the delay. The Court is not convinced that Dr. Suite's December 16, 2025 summary of anticipated opinions is sufficient. As Carnival correctly points out, "'disclosure of expert testimony within the meaning of the federal rule contemplates not only the identification of the expert, but also the provision of a written report containing 'a complete statement of all opinions' and 'the basis and reasons therefor.' *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (quoting Fed. R. Civ. P. 26(a)(2)(B)).

Moreover, Carnival has demonstrated prejudice from Plaintiff's disregard of the Scheduling Order. The deadline to complete all discovery passed on January 6, 2026, and the deadline to file dispositive motions passed on January 28, 2026. It is now too late for Carnival to obtain rebuttal reports, depose Dr. Suite about his opinions, or to raise *Daubert* challenges. Additionally, in Dr. Suite's initial summary disclosure, he indicated he would testify:

> within a reasonable degree of medical probability, that Mrs. Olenik sustained traumatic injuries in the fall and that traumatic injury in geriatric individuals is known to be associated with accelerated and/or earlier onset neurocognitive impairment. Based on the reported contrast between Mrs. Olenik's condition and functioning at/around the time of the fall and during her immediate recovery, as compared to her current condition, Dr. Suite is expected to opine that the April 29, 2024 fall more likely than not caused or substantially contributed to an early onset neurocognitive decline.

ECF No. [52-2] at 4. It is only upon receipt of Dr. Suite's untimely report in a supplemental disclosure that Carnival was notified that Dr. Suite formed the opinion that Helen Olenik suffered a concussion due to significant jarring of her head in the fall. ECF No. [52-3] at 13. Though Plaintiff claims paragraph 28 of the Amended Complaint alleges that Helen Olenik suffered "early onset of cognitive decline as a result of the traumatic fractures and the prolonged recovery time she spent in medical facilities and prolonged periods of immobility", no such language exists. Even if that allegation existed, the Court agrees with Carnival that such a statement is not the same as a theory of worsening cognitive impairment because of a concussion suffered in the fall. "While it is true that Rule 26(e) mandates, at times, a party supplement or correct its disclosure, that is not an end-around of discovery deadlines." *In re Fla. Cement & Concrete Antitrust Litig.*, No. 09-23493-CIV, 2011 WL 13174537, at *7 (S.D. Fla. Nov. 17, 2011). "The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Id*. (quoting *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)).

Similarly, the Court finds Plaintiff has failed to offer a reasonable explanation for the late disclosure of Dr. Sekunda. Though Plaintiff's counsel may not have known about Dr. Sekunda's treatment of Helen Olenik prior to the discovery deadlines, Plaintiff fails to explain why Plaintiff and his counsel did not communicate regarding this ongoing treatment. Moreover, for the same reasons as applied to Dr. Suite, Carnival has established prejudice if Dr. Sekunda is permitted to testify. As such, Carnival's Motion to Strike, ECF No. [52], is granted.

### B. Summary Judgment

#### i. Evidence of a Dangerous Condition

Carnival argues it is entitled to summary judgment on all Counts because Olenik has failed to provide evidence that the floor was contaminated or otherwise in a dangerous condition at the time of the alleged incident. ECF No. [47] at 4. Carnival contends that the CCTV camera footage shows that, prior to Helen Olenik's fall, more than 25 people were walking over the subject area without incident and there is no apparent source of liquid or contamination on the floor. *Id*. at 5. Moreover, neither John Olenik or Helen Olenik recall noticing any substance on the floor or any substance on Helen Olenik's clothing after she fell. *Id*. While Carnival acknowledges a caution sign was on the floor several feet in front of Helen Olenik, it argues the sign is not evidence of an unsafe condition but was in place to advise passengers that the floor could become wet because there was a pool nearby. *Id*. Carnival contends that although Dr. De Caso offers the opinion that the slip index of the floor, when wet, falls below the minimum threshold of safety, Dr. De Caso has no *actual* knowledge of whether the floor was wet at the time of the incident. *Id*. Similarly, Carnival argues that though Dr. De Caso opined that grease film can be a contributor to slip and fall incidents, Dr. De Caso has no knowledge of whether grease film was on the floor at the time of the incident. *Id*.

Plaintiff responds that Dr. De Caso's water testing demonstrates the subject floor was safe when dry but becomes dangerously slippery when wet. ECF No. [66] at 7. Moreover, Plaintiff contends Dr. De Caso's inspection documented visible grease contamination on the tile surface from food service operations in the adjacent buffet area. *Id*. at 8. Plaintiff asserts that the CCTV camera footage does not contradict this account because the alleged dangerous condition (a combination of water contamination from pool traffic and invisible grease film accumulation) would not be visible on a CCTV camera. *Id*. at 9. Plaintiff further asserts in his Response to

Carnival Corporation's Statement of Material Facts that the caution sign present on the floor near where Helen Olenik fell indicates the floor may have been wet because of guests using the pool and jacuzzi. ECF No. [67] ¶ 7.

To establish a breach of a defendant's duty of care in a maritime negligence case, a plaintiff must establish that "a dangerous condition existed that caused the claimed injury." *Williams v. Carnival Corp.*, 440 F. Supp. 3d 1316, 1319 (S.D. Fla. 2020); see also *Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1369 (11th Cir. 2018) ("To survive summary judgment on his negligence claim based on a dangerous condition, [a plaintiff] must produce evidence, sufficient for a jury to find for him, that the [condition identified] was a dangerous condition[.]").

Contrary to Plaintiff's argument, he has not presented any evidence of a dangerous condition on the day of the incident in question. While Dr. De Caso has opined that water or grease can cause the floor to become dangerously slippery, Dr. De Caso cannot opine as to whether the floor was dangerous on the date in question. While it is not dispositive that John or Helen Olenik notice any contamination on the floor, Plaintiff has failed to present *any* evidence that a dangerous condition existed or that anyone on the day in question noticed water, grease, or any contamination on the floor where Helen Olenik fell. *See Haiser v. MSC Cruises (USA) Inc.*, No. 18-CV-60964-RS, 2019 WL 4693200, at *4 (S.D. Fla. Aug. 9, 2019) (finding that even though the Plaintiff could not identify whether there was a foreign substance on the floor prior to her fall, her theory of liability was not hypothetical because she presented the testimony of a fellow passenger who observed a pool of water on the floor); *Merideth v. Carnival Corp.*, 49 F. Supp. 3d 1090, 1093 (S.D. Fla. 2014) (finding that though the Plaintiff could not identify whether there was a foreign substance on the floor prior to her slip and fall, Defendant's security officer testified the housekeeper cleaned up condensation); *Villa v. Carnival Corp.*, 207 F. Supp. 3d 1311, 1314 (S.D. Fla. 2016) (finding

22

that though Plaintiff could not identify the substance he slipped on, he testified that half his body was wet as a result of the fall). Moreover, though a caution sign was a couple of feet from where Helen Olenik fell, a cruise ship operator is not automatically liable any time a passenger is injured in the area of the sign. *See Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 722 (11th Cir. 2019) ("We are merely holding that a cruise ship operator has notice of a condition—and thus a duty to warn—if a sign is posted on a ship warning about the condition. This decision does not mean that a cruise ship operator is automatically liable any time a passenger is injured in the area of the sign.")

Absent any record evidence that the floor where the Plaintiff fell was wet or otherwise contaminated, Olenik's assertion of a dangerous condition is entirely hypothetical. "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller v. NCL (Bahamas) Ltd.*, No. 1:15-CV-22254-UU, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) (citing *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1237 (S.D. Fla. 2006)). "Rather, it is the plaintiff's responsibility to come forth with enough evidence proving there was a dangerous condition." *Klein v. Seven Seas Cruises S. DE R.L.*, No. 16-21981-CIV, 2017 WL 3405531, at *3 (S.D. Fla. Aug. 7, 2017). Therefore, without evidence that an existing condition was dangerous, a plaintiff's maritime negligence claim will fail.

Plaintiff has failed to present evidence sufficient for a jury to find that the Defendant had actual or constructive knowledge of any dangerous condition or had a duty to warn of that dangerous condition. As such, there is no genuine issue of material fact that exists, and Carnival's Motion for Summary Judgment, ECF No. [47], is granted.

IV.   **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion to Strike and Exclude the Opinions from Plaintiff's Expert, **ECF**

Case No. 25-cv-20901-BLOOM/Elfenbein

No. **[48]**, is **GRANTED.**

2. Defendant's Motion to Strike Plaintiff's Supplemental Rule 26 Expert Witness Disclosure for Nicholas Suite and Untimely Supplemental Disclosure of Victoria Maria-Sekunda, **ECF No. [52]** is **GRANTED.**

3. Defendant's Motion for Summary Judgment, **ECF No. [47]** is **GRANTED.**

4. To the extent not otherwise disposed of, any scheduled hearings, court appearances, and trial are **CANCELED**, all pending motions are denied as **MOOT** and all deadlines are **TERMINATED**;

5. The Clerk is **DIRECTED** to **CLOSE** this case.

   **DONE AND ORDERED** in Chambers at Miami, Florida, on April 3, 2026.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

24